UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                    Criminal Case No.: 4:24-cr-00003
                                                      Judge Roderick C. Young

RANDLE BOHREN,

                    Defendant.

**Defendant Randle Bohren's Position on Sentencing and Motion for Variance**

COMES NOW the Defendant, RANDLE BOHREN  ( "Mr. Bohren"), by counsel, pursuant to the Court Sentencing Procedures Order (ECF. 137) and for his Position on Sentencing and Motion for Variance Sentence, having reviewed the Presentence Report ("PSR") moves this Court to sentence the Defendant to substantially less than the recommended sentence in the PSR, and, in support thereof, states as follows:

**Objections to Presentence Investigation  Report and Request for Extension of Time.**

Until Mr. Bohren's recent letter to the Court (ECF. 231), the undersigned had communicated with the probation officer completing the Presentence Report (the "PO") and the attorney for the United States re amendments/corrections to the PSR. Upon receipt of the PSR the undersigned immediately sent a copy to Mr. Bohren and scheduled multiple meetings with him to review. Counsel has not been successful in reaching Mr. Bohren, most recently on October 2, 2024, October 15, 2024, and October 16, 2024, but Mr. Bohren did not log into the final video conference. Based on Mr. Bohren's letter, there are other objections/amendments to propose.

Counsel moves Court to extend the filing of Mr. Bohren's sentencing position

regardless of the Court's decision regarding Mr. Bohren's substitution of counsel motion.

## Statutory Considerations

Mr. Bohren plead guilty[1] on July 1, 2024, to the lesser offense of Count One of the indictment, Conspiracy to Possess with Intent to Distribute and Distribution of fifty (50) grams or more of a mixture of Methamphetamine, in Violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(B). The maximum penalties for the lesser offense of Count One are a mandatory minimum of five years imprisonment, a maximum of forty (40) years of imprisonment, a fine of $5,000,000.00, forfeiture of assets and a special assessment along with four (4) years of supervised release. ECF. 135. This agreement did not require the Court to sentence Mr. Bohren to a specific amount of active incarceration; The Court may sentence Mr. Bohren to any sentence within the range provided by code.

Under 18 U.S.C. 3553 the court has a responsibility to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing. This code section provides a three-step process to structure the sentence. At the end of this analysis, the court may impose a sentence outside of the recommended guideline sentence range - a "variance."

### *When A Variance Applies*

Variances are an appropriate tool the sentencing district court may use to sentence a person when the guidelines are either too harsh or not sufficient for the seriousness of the crime. *See* <u>United States v. Moreland</u>, 437 F.3d 424 (4th Cir. 2006). This Court has discretion to rely on broader and more diverse range of factors in considering a downward variance under 18 U.S.C. §3553(a).

---

[1] The undersigned notes that Mr. Bohren's letter dated October 14, 2024, and filed October 21, 2024, may complicate matters regarding Mr. Bohren's plea and positions on certain aspects of his position on sentencing.

"There is a 'long' and 'durable' tradition that sentencing judges 'enjo[y] discretion in the sort of information they may consider' at an initial sentencing proceeding. <u>Concepcion v. United States</u>, 597 U.S. 481 (2022). A federal judge in deciding to impose a sentence "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." <u>*Id.*</u> Indeed, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." <u>*Id.*</u>

Further, "[a] decision to impose a sentence more lenient than the one advised by the Guidelines was not a failure to make a finding necessary to apply the cross reference or enhancement in the first place … such a decision would be "an exercise of a district court's broad sentencing discretion." <u>United States v. Elboghdady</u>, 4th Cir. No. 22-4194, 2024 WL 4113003, at *8 (4th Cir. Sept. 11, 2024).

### *Variances may be applied liberally*

As stated above a sentencing judge has broad sentencing discretion. The judge may use this broad discretion to impose a non-Guidelines sentence that in his judgment is "more consistent with the statutory sentencing factors set out in section 3553(a)". <u>United States v. Moore</u>, 7th Cir. No. 23-2191, 2024 WL 4131161, at *3 (7th Cir. Sept. 10, 2024). Sentencing is "a fluid and dynamic process and the court itself may not know until the end whether a variance will be adopted, let alone on what grounds. <u>Irizarry v. United States</u>, 553 U.S. 708, 715 (2008).

### *Variances from Guidelines in 18 U.S.C. §3553(a)*

A variety of potentially relevant factors may be considered by the Court in fashioning a sentence that is appropriate for the charge of which the defendant was convicted. See, e.g., <u>Dean</u>

v. United States, 137 S.CT. 1170 (2017), United States v. Tomoko, 562 F.3d 558 (3rd. Cir. 2009), and United States v. Howe, 543 F.3d 128 (3d Cir. 2008).

According to Table 44 of the 2023 United States Sentencing Commission's Annual Report and Sourcebook ("2023 Sourcebook"), the most common reasons relied upon by the Courts for downward variances from the Guideline range are as follows:

1. The history and characteristics of the defendant;

2. Reflect seriousness of offense/promotes respect for law/just punishment;

3. Afford adequate deterrence to criminal conduct;

4. The nature and circumstance of the offense;

5. Protect public from further crimes;

6. Family ties and responsibilities (§5H1.6);

7. Avoid unwarranted sentencing disparity;

8. Criminal history issues;

9. Drug dependence and alcohol abuse (§5H1.4);

10. Acceptance of responsibility;

11. Age (§5H1.1);

12. Remorse;

13. Mental and emotional conditions;

14. Lack of youthful guidance/tragic or troubled childhood;

15. Previous employment record (§5H1.5);

16. Rehabilitation;

17. Role in the offense;

18. Provide correctional treatment;

19. Nonviolent offense;

20. General mitigating circumstances (§5K2.0);

21. Conduct while on release, bond, or supervision;

22. Physical condition (§5H1.4);

23. Provide educational or vocational training;

24. Pursuant to plea agreement;

25. Community ties (§5H1.6);

26. Cooperation without motion (not §5K1.1);

27. Applied proposed guideline amendment (Amendment 821);

28. Provide restitution to any victims;

29. First Step Act safety valve expansion;

30. Provide medical care;

31. Aberrant behavior (§5K2.20);

32. Early plea;

33. Waiver of appeal;

34. Charitable service/good works; and

35. Other.

2023 Sourcebook, Table 44, available at www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2023/2023_Sourcebook.pdf.

### *Main Considerations for a Variance in Mr. Bohren's Case*

In considering a variance reducing the proposed Guideline sentence for Mr. Bohren, this Court is encouraged to pay special consideration to the following:

### *The history and characteristics of the defendant*

Mr. Bohren's criminal record has been adequately discussed in the Pre-Sentence Report ("PSR") but his characteristics are still worth reviewing. In the approximately seventeen (17) years he was incarcerated, he only received fourteen (14) disciplinary notes, less than one (1) disciplinary infraction per year.

### Reflect seriousness of offense/promotes respect for law/just punishment

The Government and the undersigned disagree as to the seriousness when sentencing a person who has fallen into a horrible cycle of self-medicating drug use. The undersigned argues that a just and fair punishment would incorporate this consideration.

### Afford Adequate Deterrence to Criminal Conduct

Clearly no sentence, whether Home Incarceration or a sentence above the Guidelines will have any effect on the use of illegal substances. Whether it is the self-medication of those with mental health issues (either organic or environmental in nature) or those who fell into use by other reasons, the risk of incarceration has almost no deterrence effect.[2] Almost every seller of drugs or user of illegal substances will not know about whatever sentence Mr. Bohren receives. Additionally, severity of punishment does little to nothing to deter crime according to the United States Government. *See* U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, Five Things About Deterrence, www.ojp.gov/pdffiles1/nij/247350.pdf.

### The Nature and Circumstance of the Offense

Mr. Bohren, addicted to drugs, wound up in a situation where he was doing what he could to support his habit as self-medication for his other, organic, and environmental issues. While a drug distribution scheme of this size should not be ignored, the reasons Mr. Bohren got

---

[2] See "Federal Drug Sentencing Laws Bring High Cost, Low Return" https://www.pewtrusts.org/en/research-and-analysis/issue-briefs/2015/08/federal-drug-sentencing-laws-bring-high-cost-low-return.

sucked into it should also be considered.

*Family ties and responsibilities (§5H1.6)*

Departure from the Guidelines based on family ties and responsibilities are not ordinarily relevant nor encouraged, but they are a valid consideration under a variance. This Guideline specifically chose to use the word "may" instead of "shall" suggesting that there are times when applying this rule in a variance is appropriate.[3]

Here it is very appropriate. Mr. Bohren's mother reconnected with him, regretful of her behavior and attitudes toward parenting, drug use, and mental health treatment and modeling the same as Mr. Bohren grew from an infant into an adult.

*Avoid Unwarranted Sentencing Disparity Between Co-Defendants*

Variances may be considered by the Court based on the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. 3553(a)(6). Additionally, the Court is directed to consider when disparities are appropriate at sentencing between two similarly situated co-defendants. Gall v. United States, 553 U.S. at 55. Those disparities between co-defendants must be explained with an identified, supportable basis for the inconsistency. United States v. Reyes-Santiago, 804 F.3d 453 (1st Cir. 2015). Therefore, co-defendant disparity is not a *per se* improper factor. United States v. Smart, 518 F.3d 800 (10th Cir. 2008). The Court may fashion a sentence that attempts to address the "disparity in sentences between two nearly identically situation individuals who committed the same crime in the same conspiracy." United States v. Krutsinger, 449 F.3d 827

---

[3] The undersigned acknowledges that "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C.A. § 3553.

(8th Cir. 2006). In fact, the plain language of §3553(a)(6) seems to permit consideration of disparities between similar situated co-defendants. Unites States v. Fernandez, 443 F.3d 19 (2d Circuit 2006).

*Disparity Between Other Federal Defendants*

Regarding federal defendants, the Guidelines give a clear indication of the recommended punishment for similarly situated defendants. However, this Court may consider the disparity between the defendant and other federal defendants. United States v. Lente, 647 F.3d 1021 (10th Cir. 2011).

Overall, this Court adopted a downward variance relative to the Guideline Range in 41.8% of all cases. Id. Non-Government Variance Downward variances nationally equaled 12,848 cases. 2023 Sourcebook, Table 33.

Nationally, 47.2% of drug convictions were based on Methamphetamine. Figure D-1 2023 Sourcebook. Also, 41.1% of all drug trafficking cases involved a downward variance. 2023 Sourcebook, Table 31.

In the 4th Circuit out of 4,263 cases, the Court granted variances in 1,631cases, or 38.3% of the time. 2023 Sourcebook, Table 30.

In the Eastern District of Virginia specifically, there were 877 total cases and variances were granted in 367 cases, or 41.8% of the time. 2023 Sourcebook, Table 30.

Regarding the sentences imposed relative to the guideline range by primary sentencing guideline, of sentences imposed under Guideline 2D1.1, there were 18,640 sentences handed down by the Courts. Of these 7,671 are recorded as variances. 2023 Sourcebook, Table 32.

It is clear from the statistics that variances are not outside of the norm. They happen frequently and therefore, guideline disparity with other federal inmates or co-defendants may be

dismissed as a concern.

*Acceptance of responsibility*

Mr. Bohren voluntarily disclosed the federal offense upon interview post-arrest at the first opportunity.[4] He immediately accepted responsibility for the crime. He plead guilty.

*Remorse*

Mr. Bohren has repeatedly expressed remorse.

*Lack Of Youthful Guidance/Tragic or Troubled Childhood*

*Troubled or Traumatic Childhood*

This Court should consider Mr. Bohren's extensive childhood traumas as described in the PSR, particularly as they relate to any ongoing mental or emotional conditions from which the defendant suffers. The trauma he suffered at his parents' hands are legion. It is impossible to calculate the trauma from any one of those events. However, a scholarly article published in Forensic Psychology Today, Trauma & Children in Foster Care: A Comprehensive Overview, relates that

> **trauma is not just extremely common, but often accumulative and chronic over the individual's lifespan. Childhood adversities, such as trauma caused by abuse or parental loss,[5] are in many cases the precursors for the removal of the child, thus impacting the child's physical health as well as mental health. Toxic stress is deemed as the physiologic result of dangerous, recurrent, or prolonged experience of trauma caused by the initiation of the stress response without the protective existence of a compassionate adult. Toxic stress impacts the child's domains of cognition, learning, and memory; this leads to negative changes in behavior and the decreased ability to regulate emotions properly. In addition,**

---

[4] The undersigned acknowledges that Mr. Bohren's October 14th letter may cause pause for the Court, but should this Court consider his statements, post-Miranda, as freely, voluntarily, and intelligently given, then Mr. Bohren should receive credit for this in the Court's variance consideration.
.

9

> **toxic stress causes physical detriments and behavioral detriments including obesity, cardiovascular disease, COPD, diabetes, depression, anxiety, suicidality, and behavior issues. Similarly, children and youth in foster care have increased mental health issues; it is estimated that half (50 percent) of children and youth in the child welfare systems are at a 2.5 times heightened risk in developing mental health disorders compared to children not involved in the child welfare system. Children in foster care are diagnosed with behavioral health issues five times as often versus children not in care.**

Forensic Psychology Today, Trauma & Children in Foster Care: A Comprehensive Overview, www.digitalcommons.csp.edu/cgi/viewcontent.cgi?article=1079&context=forensic_scholars_today.

Section 3553(a) specifically counsels the Court to consider "the history and characteristics of the defendant[.]" In 2023 over 2,297 sentencing judges considered a defendant's lack of youthful guidance or tragic or troubled childhood in varying downward. See 2023 Sourcebook, Table 44.

### *Rehabilitation and Post-Sentence Rehabilitation*

Rehabilitation is a permissible factor to be considered in sentencing. "When a defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction." Concepcion v. United States, 597 U.S. 481 (2022).

### *Role in the Offense*

Mr. Bohren has freely admitted his role in this matter.[6]

### *Nonviolent Offense*

This is a non-violent offense. *See* §4B1.2(a).

### *General Mitigating Circumstances (§5K2.0)*

Although §5K2.0 is generally reserved for departures instead of variances, the sentencing

---

[6] See footnote 4.

court may consider the same criteria when considering a variance.

<em><u>Community ties (§5H1.6)</u></em>

Much like family ties and responsibilities, community ties are not usually considered relevant, but they may be considered under a variance in lieu of a departure.

<em><u>Early Plea</u></em>

Mr. Bohren plead guilty at the first available chance.

<strong><em><u>A Downward Variance is Appropriate for Mr. Bohren</u></em></strong>

Based on the above considerations and applying them to Mr. Bohren's current situation, a downward variance is appropriate. Therefore, the totality of the circumstances calls for a variance.

<u>Conclusion</u>

Therefore, Mr. Bohren encourages this Court to sentence him with significant consideration to the factors above and look to the minimum mandatory sentence in lieu of a lengthy sentence, to accept this motion and to consider the conditions which would allow Mr. Bohren to receive the needed mental and substance abuse care he needs to help prevent recidivism.

Dated: October 23, 2024

Respectfully submitted,
        /s/ Charles R. Samuels
Charles R. Samuels, VSB # 65899
Charles R. Samuels, Attorney at Law, PLLC
4908 Monument Ave., Ste. 100
Richmond, Virginia 23230
Phone: 804-677-7273
Fax: 804-843-8523
E-mail:crsamuels@gmail.com
*Counsel for Mr. Bohren*

11